## THE CARLOTTA.[1]

### KING v. THE CARLOTTA, etc.

*(District Court, E. D. New York.   January 28, 1887.)*

1. MARITIME LIENS—SEAMAN'S WAGES—SAILING-MASTER.
     A sailing-master has a lien for his wages.

2. SAME—NEGLIGENT DISCHARGE OF DUTIES—DISRATING.
     Where libelant, sailing-master on the yacht C., brought suit to recover his wages as such, the defense being that he had performed his duties in so negligent a manner that his rate of wages should be the rate paid a common seaman, it was *held* that, though he had performed some of his duties in a negligent manner, it was not such negligence as should reduce his wages to the rate claimed by the defense.

3. SAME—TRAVELING EXPENSES.
     On the evidence, *held*, that libelant was not entitled to recover his traveling expenses while going to and returning from the yacht.

In Admiralty.

*Frederick K. Custner*, for libelant.

*Carter & Ledyard*, for claimants.

BENEDICT, J.  This is an action *in rem*, instituted by the libelant to enforce a lien against the yacht Carlotta, for his wages as sailing-master, and for his traveling expenses while going from Boston to the Delaware breakwater to join the yacht, and while returning to New York from Fernandina, the place of his discharge.  There is no dispute as to the time that the libelant served on board the yacht as sailing-master, or as to the rate of wages at which he shipped.  The evidence furnishes no foundation for the claim, so far as the expenses of traveling are concerned.  The only question claiming consideration relates to the claim for wages.

At the time of the libelant's discharge at Fernandina, the owner of the yacht, who was also her master, tendered the libelant wages at the rate paid a common seaman; and he now contends that the rate of wages should be the rate paid a common seaman, upon the ground that the libelant was not competent to discharge the duties of a sailing-master, and that he was careless and negligent in the performance of those duties.  Upon the evidence there is no room to contend that the libelant was incompetent to discharge the duties of a sailing-master.  The proof is clear that he has often discharged those duties in a proper and seaman-like manner.  But it is said that, if the libelant knew his duties, he neglected to perform them.

The defense in the end came down to the proposition that the method in which the libelant kept his log deserves punishment by a reduction of his wages to the rate of a common seaman.  It is evident that the libelant in entering the dead reckoning in the log made entries that were untrue.  That, to use the expression of one of the witnesses, the log

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

was cooked in the matter of the dead reckoning entries; and I confess to surprise that a master as competent as the libelant is shown to be should have kept such a log as he did. But no damage resulted from this careless and reprehensible way of keeping the log, and it seems to me to put the libelant in the grade of a common seaman, as to his wages, for this neglect, would be severe punishment.

He will, in my opinion, be sufficiently punished for having been compelled to sue for his wages, and by refusing him costs.

He may have a decree for his wages at the rate mentioned in the articles, without costs, for I entertain no doubt as to the right of a sailing-master to a lien for wages. The libelant was not master of the yacht. He had no control over the voyages of the vessel, nor authority to buy supplies. His functions were confined to the navigation of the ship, and those he performed under the direction of the owner, who was the master.